NOT FOR PUBLICATION                                  (Document No. 14)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
BRIAN LEE NESTOR,                   :
                                    :
                    Plaintiff,      :   Civil No. 11-4683 (RBK/AMD)
                                    :
            v.                      :   **OPINION**
                                    :
                                    :
DIRECTOR OF NORTHEAST REGION        :
BUREAU OF PRISONS, et al.           :
                                    :
                    Defendants.     :
_____ :

**KUGLER**, United States District Judge:

This matter arises out of Plaintiff Brian Lee Nestor's ("Plaintiff") claims alleging constitutional injuries suffered during his incarceration at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"). Currently before the Court is Defendants Donna Zickefoose, Jennifer Ordonez, Michael Smith, and Corey Kaough's (collectively, "Defendants") motion for summary judgment on Plaintiff's Complaint (Doc. No. 14). For the reasons stated below, the Court will grant in part and deny in part Defendants' motion. Specifically, the Court will grant summary judgment on Plaintiff's claims against Donna Zickefoose, Michael Smith, and Corey Kaough in their individual capacities. The Court will deny summary judgment on

1

Plaintiff's claim against Jennifer Ordonez.  Finally, because Plaintiff seeks certain injunctive relief, Defendant Zickefoose will remain a party to the action, but only in her official capacity as warden of FCI Fort Dix.

## I.   FACTUAL BACKGROUND[1]

In August 2009, Plaintiff was incarcerated at FCI Fort Dix, in the process of serving a sentence for various sex offenses involving minors.  Aff. of Brian Nestor Lee ("Lee Aff.") ¶ 4.  Plaintiff had filed an appeal regarding his conviction, which was ultimately denied.  *See United States v. Nestor*, 574 F.3d 159 (3d Cir. 2009).  On Friday August 28, 2009, Plaintiff discovered that a summary of the Third Circuit's opinion on his appeal was included in the August 5, 2009 edition of the *Criminal Law Reporter*, a weekly publication providing "objective reporting on significant developments, trends, and emerging patterns in criminal law . . . ."  Criminal Law Reporter, Bloomberg BNA, http://www.bna.com/criminal-law-reporter-p5446 (last visited Dec. 10, 2012).  The article included Plaintiff's full name as well as a description of the crimes of which he had been convicted.  A copy of the publication was to be found in each of FCI Fort Dix's four law libraries.   Plaintiff then learned through a fellow inmate that plans were afoot to copy the article and display it throughout the prison compound, thereby publishing his name and the nature of his crime to the general prison population.  Lee Aff. ¶ 8.  Accordingly, Plaintiff feared for his safety because in his view, prison culture was such that "inmates [would] advocate violence against sex offenders whose victims were minors."  *Id.* at ¶ 9.

Plaintiff first contacted Defendant Ordonez, his case manager.  He asked her to contact Defendant Smith, who was in charge of the law libraries at FCI Fort Dix, and to direct him either to remove the article from circulation or to redact his name so that his identity might be

---

[1] When considering a defendant's motion for summary judgment, the Court views the facts underlying the claim in the light most favorable to the plaintiff.  *See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993).

concealed. *Id.* at ¶ 11. Defendant Ordonez passed along this request, but Defendant Smith refused to entertain it. Plaintiff "continued to implore Defendant Ordonez to take other immediate actions to protect [his] safety," stating that he was an "easy target" and expressing "grave concerns for [his] health and safety." *Id.* at ¶¶ 15-16. Defendant Ordonez then remarked that she had "done all she could do by contacting [Defendant] Smith," reassured Plaintiff that he would be fine, and left the facility for the weekend. *Id.* at ¶¶ 17-18.

Next, Plaintiff went to see Defendant Smith directly to express his fears for his health and safety. *Id.* at ¶ 19. He repeated his request to have Defendant Smith either redact or remove the article in the *Criminal Law Reporter*. Defendant Smith again refused to do so, and informed Plaintiff that he intended to leave the article as posted, recognizing that other inmates in the facility would learn the basis of Plaintiff's conviction. *See id.* at ¶ 20.

Consequently, later that Friday night, the other inmates in Plaintiff's area of the prison did discover the article, and they proceeded to harass Plaintiff about it *Id.* at ¶¶ 22, 26. On Saturday night, Plaintiff was sexually assaulted and raped by another inmate. *Id.* at ¶ 27. As a result of this attack, he contracted syphilis. *Id.* at ¶ 28.

Finally, some days after the attack, Plaintiff informed Defendant Kaough, a lieutenant at FCI Fort Dix, that he intended to file a grievance against the officers whom he felt were responsible for what had happened. *Id.* at ¶ 30. Plaintiff alleges that Defendant Kaough then physically and verbally assaulted him and threatened severe retribution were he to make such a complaint. *Id.* at ¶ 31.

Notwithstanding these alleged threats, Plaintiff filed an inmate grievance relating to his alleged sexual assault. Defs.'s Statement of Material Facts ¶ 39. It alleged violations of the Eighth Amendment, although it listed the date of the incident as August 29, 2010, rather than

August 29, 2009.  Defendants acknowledge that Plaintiff exhausted his administrative remedies with respect to this grievance.  *Id.* at ¶ 40.

On August 12, 2011, Plaintiff filed suit in this Court.  His complaint seeks declaratory and injunctive relief as well as money damages pursuant to the Federal Tort Claims Act ("FTCA") (Count One),[2] the Civil Rights Act of 1871 (Count Two),[3] the Fifth, Eighth and Fourteenth Amendments to the United States Constitution (Count Three), and the Prison Rape Elimination Act (Count Four).[4]  Defendants responded with the instant motion for summary judgment, asserting numerous grounds for dismissal.

## II. DISCUSSION

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing' – that is, pointing out to the district

---

[2] 28 U.S.C. §§ 1346(b), 2671 *et seq.* (2006).
[3] Specifically, Plaintiff brings suit under the Act's private cause of action for deprivation of civil rights under color of state law.  *See* 42 U.S.C. § 1983 (2006).
[4] 42 U.S.C. § 15601 *et seq.* (2006).

court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 Fed. Appx. 353, 354 (3d Cir. Sept. 17, 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. *BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   ANALYSIS

Defendants present numerous arguments in support of their motion for summary judgment. Each will be examined in turn.

#### A.   Federal Tort Claims Act

5

Count One of Plaintiff's Complaint asserts a claim for violations of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* (2006). Compl. ¶¶ 41-44. Defendants note that the only party who may be sued under the FTCA is the United States, not a federal agency or federal official. The Court finds ample support for this proposition. *See, e.g.*, *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008); *Logan v. United States*, No. 11-7235, 2012 WL 2979041 at *2 (D.N.J. July 20, 2012) (citing *CNA*); *Kennedy v. U.S. Postal Service*, 145 F.3d 1077, 1078 (9th Cir. 1998). In this case, Plaintiff did not name the United States as a defendant in his Complaint. Thus, the Court will grant all Defendants summary judgment on Plaintiff's FTCA claims.

**B.  Prison Rape Elimination Act**

Count Four of Plaintiff's Complaint seeks recovery under the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 *et seq.* (2006). Compl. ¶¶ 57-62. Defendants observe that courts have held uniformly that this statute does not create a private cause of action. Defs.'s Br. in Support of S.J. 33-34 (citing cases). Plaintiff does not offer any case law to the contrary. The Court is inclined to agree that Plaintiff may not assert a private claim under the PREA. *Accord Porter v. Jennings*, No. 10-1811, 2012 WL 1434986 at *1 (E.D. Cal. Apr. 25, 2012); *Chao v. Ballista*, 772 F. Supp. 2d 337, 341 n.2 (D. Mass. 2011) (dismissing cause of action and noting that "every court to address the issue [of whether the PREA allows a private cause of action] has held [that it does not]."). Thus, the Court will grant Defendants' motion for summary judgment on Count Four of Plaintiff's complaint.

**C.  Civil Rights Act of 1871 (42 U.S.C. § 1983 Claim)**

Plaintiff's Second Count states a claim under 42 U.S.C. § 1983 (2006), alleging violations of Plaintiff's Civil Rights under color of state law. However, it is abundantly clear

that "Section 1983 provides no cause of action against federal officers or private individuals acting under color of *federal* law." *Betlyon v. Shy*, 573 F. Supp. 1402, 1407 (D. Del. 1983) (citing *District of Columbia v. Carter*, 409 U.S. 418, 423-25 (1972); *Bethea v. Reid*, 445 F.2d 1163, 1164 (3d Cir. 1971)). In this case, Plaintiff's Complaint names persons employed as federal prison officials who derive their authority from federal law, rather than state law. Thus, a Section 1983 claim is not the proper cause of action under these circumstances. Accordingly, summary judgment on Count Two of Plaintiff's Complaint will granted in favor of Defendants.

**D.      Fourteenth Amendment Claim**

Plaintiff's Third Count alleges violation of his rights under the Fourteenth Amendment. However, the Complaint fails to provide any facts describing the nature of this alleged injury. Notwithstanding this pleading deficiency, however, the Court agrees with Defendants that the Fourteenth Amendment, by its own terms, pertains to state action, not federal action. *See Taylor v. United States*, 320 F.2d 843, 846 (9th Cir. 1963). Again, as stated above, Plaintiff names only federal officials in his Complaint. Thus, Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment claims will be granted. *See, e.g.*, *Quiles v. Vitt*, No. 09-580, 2010 WL 5559507 at *6 (M.D. Pa. Dec. 16, 2010) ("Fourteenth Amendment claims against federal officials simply cannot be sustained since the Fourteenth Amendment only addresses the deprivation of rights by state actors.").

**E.      Eighth Amendment Claim**

The gravamen of Plaintiff's claim is that he informed Defendants Ordonez and Smith that the dissemination of the article in the *Criminal Law Reporter* would pose a serious risk to his safety, that neither Defendant took any meaningful steps to mitigate this risk, and that Plaintiff suffered injuries as a result. Such allegations may form the basis of a so-called deliberate

7

indifference claim in violation of the Eighth Amendment.  It is well established that Plaintiff may assert a private suit against federal officers alleged to have violated his constitutional rights.  *See Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 69 (3d Cir. 2011) (referencing the holding of *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)).  Accordingly, in considering Defendants' motion for summary judgment on this so-called *Bivens* action, the Court's task is to determine whether Plaintiff, in his Complaint and Affidavit, has "[made] a showing sufficient to establish the existence of [every] element essential to [his] case."  *See Celotex*, 477 U.S. at 322.

Prison officials have a duty to take "reasonable measures to protect prisoners from violence at the hands of other prisoners."  *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  Officials violate this duty when they exhibit deliberate indifference to a substantial risk of serious harm to an inmate.  *Id.*  In this context, a finding of deliberate indifference requires that the official have actual knowledge of the excessive risk to inmate safety; it is not sufficient simply that he *should have known* of such a risk.  *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).  Stated another way, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A plaintiff may satisfy his burden of establishing the defendant's actual knowledge of serious risk "in the usual ways, including inference from circumstantial evidence."  *Id.* at 842.  Further, the inquiry focuses on the awareness of a substantial risk of harm *vel non*, rather than awareness of particular characteristics of that harm.  That is, a prison official who is aware of an obvious and substantial risk to inmate safety will not escape liability for deliberate indifference

8

simply because he did not actually know that the claimant was "especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843.  Nor does it matter "whether the risk comes from a single source or multiple sources." *Id.*  At bottom, the issue whether a defendant prison official had actual knowledge of a substantial risk to inmate safety is a decidedly fact-sensitive inquiry.

Accordingly, a review of the relevant case law in this Circuit reveals a dearth of bright line rules governing the sufficiency of prisoners' Eighth Amendment deliberate indifference claims.  On the one hand, a recent appeals panel found that a prisoner reporting threats to his safety in "vague and speculative terms" is insufficient to support a finding of deliberate indifference; rather, the plaintiff must show that he has been the subject of real and particular threats.  *See Knox v. Doe*, No. 12-2048, 2012 WL 2849653 at *2 (3d Cir. July 12, 2012) (unpublished) (affirming dismissal of plaintiff's complaint when, among other reasons, plaintiff failed to inform "prison officials which other prisoners were making the threats or why they were doing so").  Another panel found a claim similarly deficient because prison officials were not "informed of any specific *threat* of harm" against the plaintiff inmate.  *Day v. Federal Bureau of Prisons*, 233 Fed. App'x 132, 134 (3d Cir. 2007) (emphasis added).

However, it does not appear that the Supreme Court, in fashioning the contours of the Eighth Amendment deliberate indifference doctrine, requires a showing of particularized threats. *See Farmer v. Brennan*, 511 U.S. 825 (1994).  The Court in that case appeared to distinguish quite purposefully between the more general concept of "risk," which could be said to involve a concatenation of various forces presenting a very real though potentially indeterminate possibility of harm, and the more specific concept of "threat," which arguably implies a particular statement by a particular individual of an intention to visit harm upon another.

9

Considering such a distinction, the Court held that the Eighth Amendment imposes no requirement that a plaintiff provide "advance notification of a substantial risk of assault posed by a particular fellow prisoner." *Farmer*, 511 U.S. at 849 n.10 (rejecting the district court's apparent insistence that a plaintiff demonstrate that prison officials be aware of a "specific threat to [a prisoner's] safety") (modification in original); *see also Harper v. Albo*, No. 10-7555, 2011 WL 3740815 at *4 (E.D. Pa. Aug. 24, 2011) (holding that a deliberate indifference claim could proceed based on officer's knowledge of a general risk from a gang, even though the eventual assailant was not known either to the prison officials or the victim in advance of the attack).

   i.   *Defendant Ordonez*

With these principles in mind, the Court turns to the instant claims. On August 28, 2009, Plaintiff learned that details of the crimes for which he was convicted had been published, along with his name, in a periodical that was freely accessible to his fellow inmates. *See* Lee Aff. ¶ 7. He immediately "detailed" his concerns to Defendant Ordonez that because of the article's availability and its description of him as a child molester and a homosexual, he feared he would be subjected to violence by other prisoners. *Id.* at ¶¶ 9-10. When Defendant Ordonez asked Defendant Smith to remove or redact the article and Defendant Smith refused, Plaintiff "implore[d] Defendant Ordonez to take other immediate actions to protect [his] safety." *Id.* at ¶ 15. Defendant Ordonez responded by telling Plaintiff that she had done "all she could do" by contacting Defendant Smith; she attempted to reassure him by saying "nothing ever happens here but threats . . . you'll be just fine." *Id.* at ¶¶ 17-18 (ellipses in original).

Viewing the facts alleged and drawing all inferences in favor of the non-moving party, the Court concludes that Plaintiff has presented a disputed issue of fact as to whether Defendant Ordonez displayed a deliberate indifference to a substantial risk of harm to Plaintiff's health and

10

safety. She was aware that plaintiff was convicted of attempted child molestation and that he was a homosexual. Plaintiff described to her the risks of violence he would face if the general population were to learn of these facts. She was aware that an article identifying Plaintiff and providing these very details about him was available in the prison law library.

In addition, the Court may look to certain circumstantial evidence. *See Farmer* 511 U.S. at 842. From Defendant Ordonez's willingness to request that Defendant Smith remove or redact the offending article, a reasonable factfinder might conclude that Defendant Ordonez was aware that dissemination of the article would pose a substantial risk to Plaintiff's safety.[5] Further, from Defendant's Ordonez's statement attempting to reassure Plaintiff that "nothing ever happens here but threats," a reasonable factfinder could conclude that Defendant Ordonez herself acknowledged that Plaintiff would be threatened with violence by his fellow inmates.[6] *See* Lee Aff. ¶ 18. For these reasons, Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claim against Defendant Ordonez will be denied.[7]

---

[5] On the other hand, the fact that Defendant Ordonez passed along Plaintiff's request could arguably be an indication that she was in fact taking "reasonable measures to protect [Plaintiff] from violence at the hands of other prisoners." *Hamilton*, 117 F.3d at 746. However, Plaintiff argues that she should have taken the additional step of offering him the opportunity to spend the weekend in protective custody. Lee Aff. ¶ 17. Defendant Ordonez claims she did offer him such an option. Ordonez Aff. ¶¶ 4-11. Thus, the question of whether her actions were reasonable in light of all the circumstances raises a question of disputed material fact which renders Plaintiff's Eighth Amendment claim inappropriate for disposition on summary judgment.

[6] Of course, the Court notes that Defendant Ordonez's ultimate assurance that "you'll be just fine" could lead one to conclude that she was not aware of any actual risk to Plaintiff. On the other hand, it is possible that a factfinder could perceive the same language, given the circumstances, simply as a rationalization made by a prison case worker who was "nearing the time to leave for the weekend." Lee Aff. ¶ 16. While the Court expresses absolutely no opinion on which interpretation to credit, it simply observes that Plaintiff's claim presents the type of disputed question of material fact on this issue that precludes a grant of summary judgment.

[7] Unlike his Eighth Amendment claim against Defendant Ordonez, Plaintiff's Fifth Amendment claims against all moving Defendants do not rest upon sound legal footing and must be dismissed. First, Plaintiff asserts a Fifth Amendment equal protection claim, apparently on the basis of sexual orientation. However, his complaint fails to make any allegation that any Defendant treated him differently than any other similarly situated inmate. The failure to do so is fatal to his equal protection claim. *See Caldwell v. Beard*, 324 Fed. App'x 186, 188 n.2 (3d Cir. 2009) (citing *Wilson v. Schillinger*, 761 F.2d 921, 930 (3d Cir. 1985)).

In addition, Plaintiff's Fifth Amendment due process claim appears to rely substantially upon threats made and other acts allegedly committed by Defendant Kaough. For the reasons expressed below in part G, however, Plaintiff is

11

      *ii.*      *Defendant Smith*

With respect to Defendant Smith, while he was aware of the request to remove or redact the article, neither the Complaint nor Plaintiff's affidavit makes clear whether he was initially aware that the reason for the request was to protect Plaintiff's health and safety. However, Plaintiff avers that he made a "personal plea" to Defendant Smith, explaining that it was indeed necessary to protect his identity. Lee Aff. ¶ 20. Plaintiff alleges that, in again refusing the request, Defendant Smith became very angry and said that he was going to leave the article posted "so that every one could see what [Plaintiff] had done." *Id.*

These are scant factual allegations to support an Eighth Amendment deliberate indifference claim against Defendant Smith. Even viewing these assertions in the light most favorable to Plaintiff, the Court cannot conclude that they are sufficient to survive summary judgment. There is no indication that Plaintiff informed Defendant Smith about the nature of the risk he faced if the article were disseminated among the population, as he did when speaking to Defendant Ordonez. Further, Defendant Smith's alleged rationale in leaving the article in the library, "so that every one could see" the grounds for Plaintiff's conviction, does not, standing alone, reasonably support the inference that Defendant Smith was aware of a serious risk to Plaintiff's safety. Thus, Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claim against Defendant Smith will be granted.[8]

**F.    Qualified Immunity**

---

barred from relying on Defendant Kaough's alleged threats to support any of his *Bivens* claims because of a failure to exhaust his administrative remedies. Thus, the Court will dismiss Plaintiff's Fifth Amendment allegations.

[8] Because Plaintiff has failed to allege that Defendant Zickefoose had any involvement with the events leading up to his assault on August 29, 2009, all claims against her in her individual capacity will be dismissed. However, to the extent that Plaintiff's prayer for certain injunctive relief arising out of his Eighth Amendment claims is directed to Defendant Zickefoose in her official capacity as Warden of FCI Fort Dix, she will remain a defendant in the case as long as Plaintiff's claims supporting such relief remain viable.

Defendants assert that, even if Plaintiff did state a colorable deliberate indifference claim under the Eighth Amendment, the individual Defendants enjoy qualified immunity from suit. It is true that federal officials are generally immune from suit for civil damages so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether defendants may be protected by qualified immunity, a two-step analysis is necessary. First, the Court must consider whether, "taken in the light most favorable to the party asserting the injury, [the] facts alleged show the officer's conduct violated a constitutional right." *Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir. 2003) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, if it determines that the alleged facts do support a finding of a constitutional rights violation, a court must next "ask whether the right was clearly established." *Id.* This means that "there must be sufficient precedent at the time of [the defendant's] action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012) (citing *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)) (modifications in original).

In this case, the Court finds that a prisoner's right to be free of violence from other prisoners because of the deliberate indifference of prison officials was clearly established at the time Plaintiff was attacked. That is, by 2009, when the events giving rise to this claim occurred, the Supreme Court had made clear that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Similarly, the Third Circuit had agreed that a "prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer*, 511 U.S. at 828); *accord Leach v.*

*Drew*, 385 Fed. App'x 699, 700-01 (9th Cir. 2010) (affirming lower court's denial of defendant's motion for summary judgment based on qualified immunity because at the time of the assault on plaintiff prisoner, it was clearly "established that the failure of a prison official to respond to a known, credible threat to an inmate's safety constituted a violation of the inmate's Eighth Amendment rights"). Thus, when Plaintiff informed Defendant Ordonez that he feared for his safety because of the threats he would face as a result of the *Criminal Law Reporter* article being published to the members of his cell block, it is possible for a factfinder to conclude that reasonable officials in Defendant's position would have understood that not taking meaningful steps to address Plaintiff's concerns would constitute deliberate indifference in violation of Plaintiff's constitutional rights. Thus, the Court cannot find at this time that Defendant Ordonez is entitled to qualified immunity from suit.

**G.     Failure to Exhaust Administrative Remedies**

Finally, Defendants argue that Plaintiff's claims are barred for failure to exhaust administrative remedies. Specifically, while acknowledging that Plaintiff did file a grievance with the prison system on October 8, 2010 which was ultimately denied, Defendants argue that this grievance was too general because it did not "provide any notification to the Bureau as to how the Bureau violated [Plaintiff's] rights." Defs.'s Br. in Support of S.J. 11. Thus, Defendants argue, Plaintiff should be barred from asserting in his Complaint specific claims for deliberate indifference in violation of the Eighth Amendment.

The Prison Litigation Reform Act, which applies to inmate suits about prison life, provides that "[n]o action shall be brought with respect to prison conditions . . . under any . . . Federal law, by a prisoner confined in any . . . correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2006). This exhaustion requirement applies to *Bivens* actions. *Nyhuis v. Reno*, 204 F.3d 65, 68 (3d Cir. 2000).

The Bureau of Prisons has set out its administrative remedy procedure in 28 C.F.R. § 542.10 *et seq.* and in Program Statement 1330.13, *available at* www.bop.gov/policy/progstat/1330_013.pdf. These documents provide no guidance about the specificity with which a prisoner must describe his grievance in order to preserve his right to assert a claim in federal court. While the Third Circuit has yet to address this issue in a comprehensive manner, it has noted generally that "[t]he primary purpose of a grievance is to alert prison officials to a problem." *Williams v. Beard*, 82 F.3d 637, 640 (3d Cir. 2007). Such language has led at least one court in this District to embrace the standard adopted by six circuit courts: that a grievance "suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Olivares v. United States*, No. 07-3476, 2010 WL 5251429 at *4 (D.N.J. Dec. 15, 2010) (citing *Griffen v. Arpaio*, 557 F.3d 1117 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) (collecting cases from the Second, Fifth, Sixth, Seventh, Ninth, and Tenth Circuit Courts)). This Court sees no reason to reject such a sensible interpretation, and Defendants cite to no binding precedent suggesting that the Court must require heightened specificity in this case. Thus, the Court looks to the grievance filed by Plaintiff to determine whether it provided the Bureau of Prisons with sufficient notice of the "nature of the wrong" for which Plaintiff now seeks redress in this Court. *See Olivares*, 2010 WL 5251429 at *4.

In this case, Plaintiff's grievance stated, in relevant part: "Due to my rape and assault on 8/29/10 at Fort Dix FCI, my Eighth Amendment Rights were violated (subjection to cruel and unusual punishment.)." Decl. of Tara Moran, Exh. 3.[9] The Court finds that this statement, in

---

[9] The Court is mindful of Defendant's observation that Plaintiff used the wrong date in his administrative grievance. Specifically, while the alleged attack appears to have occurred in August 2009, Plaintiff's grievance form lists the

making specific reference to a violation of Plaintiff's Eighth Amendment rights arising out of a sexual assault, could reasonably be construed as stating a claim of deliberate indifference on the part of the officials who failed to protect Plaintiff from such an assault. Accordingly, the Bureau should have been on notice of a problem it may have had in keeping Plaintiff protected from violent attacks by other prisoners. For these reasons, the Court holds that Plaintiff is not barred under 42 U.S.C. § 1997e(a) from asserting his Eighth Amendment deliberate indifference claim against Defendant Ordonez.

On the other hand, the alleged physical and verbal threats made to Plaintiff by Defendant Kaough occurred after Plaintiff was attacked. Thus, Defendant Kaough's alleged actions could not have played a role in Plaintiff's deliberate indifference claim. Accordingly, these allegations are outside the scope of the Plaintiff's October 8, 2010 grievance. As Plaintiff has filed no other grievances arising out of his assault, the Court holds that his claims against Defendant Kaough are barred for failure to exhaust administrative remedies.[10]

## IV. CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part Defendants' motion for summary judgment. Specifically, the Court will grant summary judgment for Defendants on Plaintiff's claims against Defendants Donna Zickefoose, Michael Smith, and Corey Kaough in their individual capacities. The Court will deny summary judgment on Plaintiff's claim against Defendant Jennifer Ordonez for violations of the Eighth Amendment, but will grant summary judgment on all other claims asserted against her. Finally, because

---

date as August 29, 2010. This may have created some confusion on the part of the officials reviewing the grievance, but the Court finds that this typographical error is not enough to nullify Plaintiff's attempts to exhaust his administrative remedies. That is, when it became clear to prison officials that Plaintiff was not incarcerated at Fort Dix in August 2010, it would have been easy enough to look into his records and determine that he was at the facility one year earlier. This would presumably have cured the defect and put the prison on notice of a possible *Bivens* claim.

[10] As a result of this and other holdings in this opinion, Defendant Corey Kaough will be dismissed from the case.

Plaintiff seeks certain injunctive relief on his surviving Eighth Amendment claim, Defendant Zickefoose will remain a party to the action, but only in her official capacity as warden of FCI Fort Dix. The Court shall issue an appropriate order.


Dated: 12/18/2012                              /s/ Robert B. Kugler
                                                                                        ROBERT B. KUGLER
                                                                                        United States District Judge